**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

————————————————————————  )
**FULVIO JOSEPH GENTILI, individually**  )
**and as Trustee of Renato Gentili Trust,**  )      **CIVIL ACTION**
**Plaintiff,**  )      **NO.  4:20-cv-40062-TSH**
  )
**v.**  )
  )
**TOWN OF STURBRIDGE,**  )
**Defendant.**  )
————————————————————————  )

<u>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 16, 17)**</u>

**August 10, 2021**

**HILLMAN, D.J.,**

Joseph Fulvio Gentili ("Plaintiff") brought this action against the Town of Sturbridge (the "Town") in his individual capacity and as a Trustee of the Renato Gentili Family Trust.  Before the Court are Plaintiff and the Town's cross motions for summary judgment.  (Docket Nos. 16, 17).  After hearing and upon review, Sturbridge's motion for summary judgment (Docket No. 16) is <u>***granted***</u> and Plaintiff's motion for summary judgment (Docket No. 17) is <u>***denied***</u>, as Plaintiff's Fifth Amendment Takings Clause claim is res judicata and barred by the *Rooker-Feldman* doctrine.

1

## II.  Background[1]

*209 Charlton Road*

Plaintiff is a beneficiary and trustee of the Renato Gentili Family Trust (the "Trust"). The Trust is the record owner of a triangular-shaped parcel of land located at 209 Charlton Road in Sturbridge, Massachusetts.  209 Charlton Road (the "Property") is an approximately one-acre parcel of land which is undeveloped and zoned for commercial use.  The Property abuts Hall Road to the South and Charlton Road to the North.  Charlton Road, also known as Route 20, is a four-lane highway.  The Town maintains and owns both roads.  Across Hall Road to the south of the Property at 80-98 Hall Road lies another triangular shaped parcel which is privately owned by DHS Sturbridge and contains an apartment complex called Sturbridge Meadows.  The DHS Sturbridge Property is uphill from the Property.

*The Old Town Culvert*

In the 1930s, the Town built the Old Town Culvert to discharge stormwater onto the Property to prevent flooding on Hall Road.  The Old Town Culvert was thirty inches in diameter and made of reinforced concrete, but it lay completely within the Town's Hall Road right-of-way.

*The New Town Culvert*

In 1987, the Town authorized the widening and reconstruction of Hall Road.  As part of this project, the Town replaced the Old Town Culvert with the New Town Culvert.  The New Town Culvert is a 24-inch corrugated metal culvert that runs northwest/southeast beneath Hall Road.  It starts on the Sturbridge Meadows side of Hall Road and discharges onto the Property.

---

[1] These facts are taken from the parties' statements of material fact, as well as the Land Court's detailed January 10, 2018 Decision, *Gentili v. Sturbridge I*, 2018 WL 446353 (Mass. Land Ct. Jan. 10, 2018).  *See infra*, Part III.Procedural History.

The physical structure of the New Town Culvert extends 7.5 feet into the Property.  In addition to general stormwater runoff, during and after storm events the New Town Culvert may also capture overflow from an intermittent stream that begins south of the Sturbridge Meadows property, flows through the Sturbridge Meadows Property, and underneath Hall Road.  The stream first appeared in the U.S. Geological Survey's 1982 map of the area.

The Trust never gave the Town permission to discharge stormwater into the Property or construct the New Town Culvert.  The Town has maintained the New Town Culvert since 1987. Depending on the amount of stormwater runoff, a substantial amount of stormwater may be discharged through the New Town Culvert onto the Property, as well as debris and other material generated by erosion.  For example, the Massachusetts Land Court found that during a "25-year storm event" the New Town Culvert's peak flow rate would measure 28.28 cubic feet per second, and if the New Town Culvert were to become blocked, water, eroded pavement from Hall Road, and other debris would likely be carried onto the Property.

*The Trust's Attempts to Sell or Develop the Property*

In July 1997, the Trust filed a request for determination of the applicability of the Wetlands Protection Act to the Property with the Sturbridge Conversation Commission.  The Commission determined there were no wetlands on the Property.  Six years later, the Trust's tenant, Robert F. Williams, filed a second request for determination in 2003.  This time, the Commission determined that there *were* wetlands on the Property, noting that while there was no water on site in 1997, the intervening development in the surrounding area had impacted "the site and area hydrology."

Per Plaintiff, the Commission's revised wetlands determination substantially impacted the Trust's ability to sell the Property.  In April 2009, the Trust entered into a $380,000 sales

agreement with the Richmond Company which fell through, though the buyer's letter terminating the Agreement did not provide a reason for the termination. (Docket Nos. 21-3 (Sales Agmt.); 17-3 (May 14, 2009 letter cancelling contract)).  In November 2009, the Trust retained Jalbert Engineering to prepare a site plan, which delineated an "area of man-made run off" on the Property which extends into the Commonwealth's right of way for Charlton Road/Rte. 20.  (Docket No. 8-3 at 5).  In June 2013, the Trust entered into another sales agreement with Charter Foods North, LLC for $260,000.  (Docket No. 21-6).  That contract was terminated by mutual agreement.  (Docket No. 21-6 at 14).  In October 2015, the Trust received a $150,000 offer to purchase from Michael and Katherine Poirier conditioned on the Town's approval of a drainage change plan.  (Docket No. 21-7 at 1).  That sale also failed, presumably for the lack of a drainage change plan.

The Trust's attorney, Robert Capobianco, wrote the Town about the Property on July 20, 2015 and attended an August 17, 2015 Town Board of Selectmen meeting.  The July 20, 2015 letter was not part of the record, though the official minutes for the Board of Selectmen were provided.  (See Docket No. 21-12).  The third issue discussed at the meeting was "Culvert Under Hall Road."  (*Id.* at 2).  The Town Director of Public Works, Greg Morse (who was also a witness at the 2018 Land Court trial), stated that in his opinion, the Town had acquired a prescriptive easement on the Property because the discharge from the New Town Culvert had existed for at least twenty years.  (*Id.*).  Attorney Capobianco replied that the Town's discharge was illegal and had created a manmade wetland on the property, and submitted evidence to the Board concerning the 1997 no-wetlands determination; the Jalbert Engineering survey of the Property; that the Town had installed the New Town Culvert; and a title examiner's report that no easement had been recorded for the Town pertaining to the Property. (*Id.* at 3).  Attorney

4

Capobianco inquired whether the Town would consider rerouting the discharge to a nearby drainage ditch; Morse declined. (*Id.*).  At no point did the Trust demand or file an action to seek compensation for the easement prior to 2015.

### III.  Procedural History

*Land Court Case*

In December 2015, the Trust filed suit against the Town[2] in the Massachusetts Land Court, seeking "a declaration that the Town has no prescriptive easement or other right to discharge water onto 209 Charlton Road 'so as to create wetlands.'"  *Gentili v. Town of Sturbridge I*, 2018 WL 446353 at *6 (Mass. Land Ct. Jan. 10, 2018).  The Land Court visited the Property, Hall Road, and DHC Sturbridge's parcel, and held a trial on December 8, 11, and 12, 2017.  *Id.* at 1.

Under Massachusetts law, in order to acquire a prescriptive easement a municipality:

"must demonstrate (1) "unexplained use for more than twenty years which is open, continuous, and notorious," and (2) "proof sufficient to satisfy a trier of fact that the municipality has exercised dominion and control over the land in its corporate capacity through authorized acts of its employees, agents or representatives to conduct or maintain a public use thereon for the general benefit of its inhabitants.""

(*Id.* at *7 (citing *Athanosiou v. Bd. of Selectman of Westhampton*, 92 Mass. App. Ct. 92, 96 (2017) (citations omitted)).

Applying that standard, the Land Court found that "[t]he Town has acquired, over time, several overlapping easements over 209 Charlton Road."  *Id.* at 7.  It determined that the easements were the result of the Town's actions, and that they served the public purpose of "ke[eping] Hall Road clear of the substantial surface waters carried by the Stream during and

---

[2] The Trust amended the Land Court complaint in February 2016 to add claims against DHC Sturbridge, which is not a defendant in the instant action.

after storms." *Id*.  The Land Court determined that the Town had established its first easement

sometime in the 1950s (20 years after the installation of the Old Town Culvert), but that that

easement had been replaced by a new easement the Town acquired in 2007 (20 years after the

installation of the New Town Culvert).  *Id*. at 8.  The new easement differs from its predecessor

in two ways: it encroaches onto 209 Charlton Road by 7.5 feet, and it has shifted north because

the mouth of the New Town Culvert discharges water further north on the Property than the Old

Town Culvert.  *Id*.  The Land Court further determined that the Town's use had not

overburdened the scope of the easement. *Id*. at 10.

The Land Court judgment declared that the Town had a prescriptive easement to "(a)

keep and maintain the New Town Culvert, in its present location on 209 Charlton Road, and (b)

discharge through the New Town Culvert and onto 209 Charlton Road, with the "Area of Man

Made Drainage" depicted on Trial Exhibit 22 [the survey map prepared by Jalbert Engineering],

storm water carried by the Stream and the Hall Road Catch Basin in their current conditions, so

long as they drain only their current watersheds." *Id*. at 11.  It specifically stated that it would not

address any of the Trust's state or federal constitutional claims that the Town was liable for a

taking without compensation because the Land Court had no jurisdiction over takings claims.  *Id*.

*Worcester Superior Court*

On May 14, 2018, the Trust filed a complaint against the Town in Worcester Superior

Court seeking reasonable compensation for the prescriptive easement under the Fifth

Amendment and Article 10 of the Massachusetts Declaration of Rights (Count I); special and

peculiar damages, to wit attorney's fees and costs and the loss of the Property's value in October

2015, as measured by the $150,000 purchase offer from Michael and Katherine Poirier (Count

II); and assessed taxes for all years during which the Property was taken by the Town (Count

III).  (*Gentili v. Sturbridge II*, Case No. 18-cv-721A; Docket No. 16-2 at 26-35).   Like the Fifth

Amendment of the United States Constitution, which prohibits the taking of private property for

public use without just compensation, Article 10 of the Massachusetts Declaration of Rights

provides that "whenever the public exigencies require that the property of any individual should

be appropriated to public uses, he shall receive a reasonable compensation therefor."  The Town

and the Trust filed cross motions for summary judgment.   Neither side disputed the Land

Court's findings that the Town had acquired a valid prescriptive easement as to the New Town

Culvert in 2007.  2019 WL 11276388 at *1 (Mass. Super. Ct. Feb. 28, 2019).

Judge Wrenn ruled for the Town, finding that there was no taking: "It was the Trust's

failure to assert its property rights not any state action that caused the property rights to be lost,

that is Sturbridge acquired its easement for drainage purposes due to the inaction of the Trust

over a continuous, open and notorious period of twenty years.  That scenario and factual

circumstance does not constitute a "taking" that requires compensation."  *Id.* at *2 (citing *Texaco

v. Short*, 454 U.S. 516 (1982).

*Supreme Judicial Court*

The Trust filed an appeal, which the Supreme Judicial Court ("SJC") took up *sua sponte*.

The principal issue that the Trust raised was whether the Superior Court erred when it

determined that the Town's easement was "not a 'taking'" requiring compensation under the

Fifth Amendment to the U.S. Constitution or Article 10 of the Massachusetts Declaration of

Rights or Chapter 70.  (Docket No. 20-2 at 83).

The SJC heard oral argument and held that "[t]he Trust had no basis on which to claim a

taking by the town because the town acquired the right to use the property (to discharge storm

water onto it) via the prescriptive easement, and the trust lost its right to the property in that

regard." *Id.* at 1012.  *Gentili II*, 484 Mass. 1010 (Feb. 24, 2020).   Like the Superior Court, the

SJC based its ruling on the Supreme Court's rationale from *Texaco v. Short* to the underlying

dispute, rather than any state court precedent on the Fifth Amendment or Article 10.  *Texaco* at

530 ("It is the owner's failure to make any use of the property—and not the action of the State—

that causes the lapse of the property right; there is no 'taking' that requires compensation.").  In a

footnote, the SJC explained that "[b]ecause we conclude that no taking occurred, we need not

address the trust's remaining arguments regarding the amount of damages or just compensation

due to it." *Gentili II*, fn. 7.

*The Instant Action*

Plaintiff filed the instant action against the Town pursuant to 42 U.S.C. § 1983 in his

individual capacity and as a Trustee purporting to represent the Trust.  (Compl., Docket No. 1).

As with the action before the Superior Court, the federal complaint seeks compensation for the

Town's prescriptive easement under the Fifth Amendment, as applied to the states, though not

the Declaration of Rights (the Commonwealth's Constitution).  Specifically, he seeks:

$47,511.50 for attorney's fees and costs associated with the Land Court litigation; $445,00 as the

Property's 2018 fair market value; and a refund of prior real estate taxes paid by the Trust to the

Town, in an amount to be determined.  (¶ 51).

## I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be

granted if the moving party shows, based on the materials in the record, "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To

avoid summary judgment, a factual dispute must be both "genuine" and "material."  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is "genuine" if the

8

evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" if it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an "absence of evidence to support the nonmoving party's case."" *Rakes v. United States*, 352 F.Supp.2d 47,52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex* at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002).

## IV.  Discussion

*The Fifth Amendment*

The Fifth Amendment to the U.S. Constitution provides that "private property [shall not] be taken without just compensation." U.S. CONST., amend. V. "Government action categorically violates the Takings Clause if it results in the permanent occupation of property or if it denies the owner all economically beneficial use of his property." *Philip Morris, Inc. v. Reilly*, 267 F.3d 45, 55 (1st Cir. 2001) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)). The purpose of the amendment is "to bar Government from forcing some people

alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 831-32.

*Easements and Eminent Domain in Massachusetts*

Massachusetts law provides for the creation of prescriptive easements.  M.G.L. c. 187 § 2.  "Acquisition by prescription of a right of way over land of another requires continued, uninterrupted use of that easement for twenty years.  As with adverse possession, the use must be open, notorious, continuous, and adverse."  *Rotman v. White*, 74 Mass.App.Ct. 586, 589 (Mass. App. Ct. 2009).

Additional statutes come into play when the state creates the easement.  State law allows the state to take private property by right of eminent domain, which requires an authorized political body to issue an order of taking specifying the property to be taken.  M.G.L. c. 79 § 1. If the state does not use the eminent domain mechanism before taking private real property for public use, then state law provides that the owner is entitled to compensation upon petition to the commonwealth or the responsible county, city, town, district, or other body who committed the taking.  M.G.L. 79 § 10.

A.  Plaintiff's Standing to Represent the Trust

Per Plaintiff, the Trust has two beneficiaries—himself and his sister, who have equal shares.  Plaintiff is representing his personal interest in the Trust *pro se*, and also purports to represent the Trust in his capacity as a Trustee.  However, under Massachusetts law "[l]egal entities such as corporations, limited liability companies, and trusts cannot be represented by individuals who are not licensed to practice law." See *Braxton v. Boston*, 96 Mass. App. Ct. 714, 717, 138 N.E.3d 440 (2019) (*emphasis added*).  This issue was not addressed in the state court

actions because the Trust was represented by counsel, and it was not addressed earlier in this action because Plaintiff represented that he was an attorney admitted to practice in this Court under L.R. 83.5.5(c).  (Compl. ¶ 2, Docket No. 1) ("Plaintiff brings this action on his own behalf and on behalf of the Trust in accordance with Local Rule 83.5.5(c) as he is an attorney admitted to practice in this Court.").  The Town raised it at summary judgment.

According to the Massachusetts Bar Association's website, Plaintiff (Board of Bar Overseers #189060) is a retired member of the state bar. While he can appear *pro se* on his own behalf (assuming he has standing as a beneficiary or trustee of the Trust), he cannot represent the Trust because he is no longer a licensed attorney in the Commonwealth, nor has he shown any other basis to practice law in our Court, such as applying for pro hac vice privileges on the basis of licensure in another state.  At oral argument, Plaintiff represented that non-active or retired attorneys remain licensed to practice law and that the United States Court for the District of Massachusetts' L.R. 85.5.5 permits his appearance on behalf of the Trust, but both assertions are incorrect.  In fact, L.R. 85.5.5(b) explicitly bars *pro se* litigants from representing any other party and L.R. 85.5(c) provides that a trustee may not appear on behalf of a trust unless that person "is also an attorney who is otherwise permitted to practice in this court."  Furthermore, inactive or retired attorneys are no longer eligible to practice law within the Commonwealth.  S.J.C. R. 4.02.4 and 4.02.5.

Plaintiff assured the Court that his sister (the other Trust beneficiary) is aware of and supports this suit.  He offered to have his sister and the attorney who represented the Trust in the state court proceedings enter an appearance to resolve any issues as to his standing, but that would not resolve the issue of representation of the Trust up this point—all the pleadings in this

case are signed by Plaintiff alone. The Court asked Plaintiff to provide further briefing on his

capacity to represent the Trust, but he did not comply.

Under L.R. 83.5.5(c), the Court may strike any pleading filed on behalf of any entity that

purports to appear *pro se*.  Since this issue was not raised earlier and Plaintiff may be able to

represent his own personal interest as a beneficiary (but not the Trust itself), I decline to strike

the pleadings. The Town has spent considerable resources to brief and argue the summary

judgment motions in this case.  For any further motions in this case or future actions brought in

this District, the Trust must be represented by counsel.


B.  Res Judicata

Plaintiff does not dispute the Land Court's finding that the Town acquired a valid

prescriptive easement as to the New Town Culvert in approximately 2007; rather, Plaintiff

argues that a state's acquisition of property or property rights through a prescriptive easement is

a taking that entitles the owner to just compensation under the Fifth Amendment.  The Town

argues that Plaintiff's claim that the Town's prescriptive easement was a taking is res judicata

because it was fully litigated by the Superior Court and the SJC, or in the alternative is barred

under the narrower scope of the *Rooker-Feldman* doctrine.  Both theories limit a federal district

court's review of prior court decisions in different respects.

"Under federal law, 'a federal court must give to a state-court judgment the same

preclusive effect as would be given that judgment under the law of the state in which the

judgment was entered.' *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct.

892, 79 L.Ed.2d 56 (1984).  This principle applies to a § 1983 action brought in federal court

following a state-court judgment.  *Id*. at 83–85, 104 S.Ct. 892." *Torromeo v. Town Of Fremont*,

NH, 438 F.3d 113, 115–16 (1st Cir. 2006).  Thus, the preclusive effect of the SJC's prior

unfavorable ruling on this action is determined by applying Massachusetts' res judicata rules.

"The term "res judicata" includes both claim preclusion and issue preclusion."  *Kobrin v.*

*Board of Registration in Medicine*, 444 Mass. 837, 843 (Mass. 2005) (citing *Heacock v.*

*Heacock,* 402 Mass. 21, 23 n. 2, 520 N.E.2d 151 (1988).  "Claim preclusion makes a valid, final

judgment conclusive on the parties and their privies, and prevents relitigation of all matters that

were or could have been adjudicated in the action."  *O'Neill v. City Manager of Cambridge,* 428

Mass. 257, 259, 700 N.E.2d 530 (1998), quoting *Blanchette v. School Comm. of Westwood,* 427

Mass. 176, 179 n. 3, 692 N.E.2d 21 (1998).  It "is 'based on the idea that the party to

be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit.'

" *O'Neill v. City Manager of Cambridge, supra,* quoting *Heacock v. Heacock, supra* at 24, 520

N.E.2d 151.  Applying claim preclusion requires three elements: "(1) the identity or privity of the

parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final

judgment on the merits." *DaLuz v. Department of Correction,* 434 Mass. 40, 45, 746 N.E.2d 501

(2001) (citing *Franklin v. North Weymouth Coop. Bank,* 283 Mass. 275, 280, 186 N.E. 641

(1933).

Here, there can be no doubt that the first two elements of claim preclusion are satisfied as

to Plaintiff's Fifth Amendment claim that the Town's establishment of a prescriptive easement

was a taking that entitles the Trust to just compensation.  The identity of the parties in the state

and federal actions are the same.  Although the Trust, not Plaintiff, was the party to the state

suits, Plaintiff's representation that he and his sister, the only Trust beneficiaries, support the

federal action is adequate for a finding of privity for the purposes of res judicata.  To allow

Plaintiff to wriggle off the res judicata hook because he decided to prosecute this case *pro se*

rather than retain a lawyer for the Trust would be inequitable.  The identity of the causes of action are the same because they "derive from the same transaction or series of transactions"— whether the Town's prescriptive easement on the Trust's property gave rise to the Fifth Amendment Takings claim.  See *Giragosian v. Ryan*, 545 F.3d 59, 63 (1st Cir. 2008).  The only remaining question is whether the SJC issued a final judgment on the merits of Plaintiff's Fifth Amendment claim.

I find that the SJC issued a final judgment on the merits of Plaintiff's Fifth Amendment claim. The Supreme Court's analysis in *San Remo* concerning whether a petitioner with a facial and as-applied challenge against a municipal hotel conversion ordinance could relitigate its Fifth Amendment claim in federal district court after the California Supreme Court had rejected it is instructive.  *San Remo, L.P. v. City and County of San Francisco*, 545 U.S. 323 (2005).  There, the plaintiff, a hotelier, claimed that a city regulation requiring hotels owners to build new residential units, rehabilitate old ones, or pay an "in lieu fee" before they could convert residential units into tourist units was unconstitutional under the United States Constitution and the California Constitution. *Id*. at 329.  The case reached the California Supreme Court.  *Id*. at 333.  In its analysis of the state constitutional taking claim, the California Supreme Court "noted that petitioners had reserved their federal causes of action and sought no relief for any violation of the Federal Constitution" but decided to "analyze their takings claim under the relevant decisions of both this court and the United States Supreme Court" because it appeared that the state justices had "construed" both constitutional clauses "congruently." *Id*.

The federal district court and the Ninth Circuit agreed that the hotelier was bound by the California Supreme Court's Fifth Amendment analysis, and the Supreme Court affirmed.  *Id*. at 335.  The Supreme Court observed that the Full Faith and Credit Statute, 28 U.S.C. § 1738, has

14

codified the longstanding rule "that parties should not be permitted to relitigate issues that have been resolved by courts of competent jurisdiction." *Id.* at 336. It reiterated its prior holding that "issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court . . . The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather the question is whether the state court *actually decided* an issue of fact or law that was necessary to its judgment." *Id.* at 342 (emphasis added). Unless Congress has expressed an intent to exempt a claim from the full faith and credit statute, federal courts should apply "our normal assumption that the weighty interests in finality and comity trump the interest in giving losing litigants access to an additional appellate tribunal." *Id.* at 345.

Plaintiff insists that, unlike the California Supreme Court decision in *San Remo*, the SJC "based its decision solely on state property law" rather than "under the relevant decisions of . . . the United States Supreme Court." *See* Docket No. 17-14 at 2; *San Remo* at 335. I cannot reconcile Plaintiff's argument that his Fifth Amendment claim was not "actually decided" in the state courts with the SJC's extended discussion of the Supreme Court's *Texaco v. Short* decision. *See Gentili v. Sturbridge II*, 484 Mass. at 1010, 1011 (Mass. 2020). In *Texaco*, the Supreme Court upheld the Indiana Dormant Mineral Interests Act against a Takings Clause challenge. Under that statute, "a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owners of the property, unless the mineral owner files a statement of claim in the local county recorder's office. *Texaco, Inc. v. Short*, 454 U.S. 516, 519 (1982). The Supreme Court held that the statute was within Indiana's power, and observed that it "has never required the State to compensate the owner or the consequences of his own neglect." *Id.* at 530. The Court concluded that after the mineral rights had been abandoned

for twenty years, their former owner "retains no interest for which he may claim compensation." *Id*. "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no taking that requires compensation." *Id*. Both Texaco and this case involve state statutes. The SJC acknowledged that Indiana's Mineral Lapse Act extinguishes certain property rights in mineral interests while Massachusetts' prescriptive easement statute confers property rights (M.G.L. c. 187, § 2), but found that *Texaco*'s rationale "applies equally." *Gentili II* at 1012. Although the SJC cited decisions supporting its holding that prescriptive easements are not takings from Alaska, Ohio, and Maine state courts, those decisions merely bolstered its principal reliance on *Texaco*. *Id*.

Plaintiff takes issue with the SJC's reliance on *Texaco* rather than the other federal constitutional precedent he cited and discussed at length in his SJC brief and summary judgment pleadings in this case. Per Plaintiff, "*Texaco v. Short* should not now be used by this Court to circumvent constitutional standards by use of an inapplicable rationale, which rationale was expressly adopted by the Supreme Judicial Court . . ." (Docket No. 17-14 at 13). Simply put, Plaintiff thinks that the SJC got it wrong, and urges this Court to take the extraordinary step of overruling the SJC's constitutional analysis. Even if this Court agreed with Plaintiff's application of *Texaco*, it could not act. With very limited exceptions which are not applicable here, only the United States Supreme Court has appellate jurisdiction to review a state court's judgment. *Exxon-Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292 (2005).

The federal action before this Court has identical parties, is an identical action, and received a prior final judgment on the merits in state court. Having determined that all three elements of claim preclusion under Massachusetts law are satisfied, Plaintiff's Fifth Amendment claim against the Town is precluded unless some exception to res judicata applies. Because

16

Plaintiff has not identified any applicable exception, his claim for just compensation is precluded under Massachusetts law.

C. Rooker-Feldman

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over "federal complaints ... [that] essentially invite[ ] federal courts of first instance to review and reverse unfavorable state-court judgments." *Exxon Mobil,* 125 S.Ct. at 1521; *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)." *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 20 (1st Cir. 2005). In practice, however, *Rooker-Feldman* "is nearly redundant because most of the actions dismissed for want of jurisdiction also could be resolved by invoking the claim- or issue-preclusion consequences of the state judgments." FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 4469.1 (Apr. 2021).

In addition to claim preclusion, *Rooker-Feldman* also precludes this Court, which is a federal court of first instance, from re-litigating Plaintiff's Fifth Amendment claim against the Town. The Supreme Court has limited the doctrine to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon-Mobil* at 1521-22. It has also clarified that "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Furthermore, *Rooker-Feldman* does not apply to parallel state and federal litigation; judicial review of executive action, including state

17

agency determinations; and actions by a non-party to an earlier state suit. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006).

Plaintiff is the same state-court loser who, injured by the SJC's final ruling that a prescriptive easement is not a taking for the purposes of the Fifth Amendment, seeks to reverse that decision here in federal court. The SJC's decision and its denial of the motion for reconsideration were both issued before Plaintiff initiated the federal action, and there is no independent claim. Plaintiff overtly seeks to overturn the SJC's Fifth Amendment decision by supplying the Court with what it considers to be more favorable federal precedent than the federal case that the SJC relied upon. There is no denying that Plaintiff is asking this court to do what it cannot— review and reverse an unfavorable state-court judgment.

Plaintiff's claim is barred by the *Rooker-Feldman* doctrine.

D.  Statute of Limitations

Because Plaintiff's Takings Clause claim is res judicata and barred by the *Rooker-Feldman* doctrine, I will not address the Town's additional argument that the claim is untimely.

## V. Conclusion

Plaintiff's Fifth Amendment claim against the Town is barred by res judicata and the *Rooker-Feldman* doctrine. For the reasons set forth above, Sturbridge's motion for summary judgment (Docket No. 16) is ***granted*** and Plaintiff's motion for summary judgment (Docket No. 17) is ***denied***.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**U.S. DISTRICT JUDGE**